120

[No. 21381. *En Banc.* March 11, 1929.]

*In the Matter of the Guardianship of* GEORGE KING, *a minor.*

MARGUERITE WELLS, *as Guardian, Appellant,* v. CRAIG-FRITTERER COMPANY, *Respondent.*[1]

*Revelle, Revelle & Kells* and *L. A. Michelson,* for appellant.

*Short & Hovey* and *Spencer D. Short,* for respondent.

TOLMAN, J.—On March 19, 1928, a final decree was entered settling the guardian's final account, and the guardian has appealed therefrom, questioning certain provisions of the decree which will be pointed out as we proceed.

George F. King died in 1907, leaving a widow and a minor son, George King, then about two years of age. The widow apparently acted as administratrix, and the probate was closed and the estate distributed in equal shares to the widow and son in 1909.

[1]Reported in 275 Pac. 82.

The child, at all times, lived with the mother, and she provided for it and for her own needs by using, indiscriminately, for that purpose, the common property of both. In 1910 the widow remarried, and the child became a member of the new family. In 1912 the land, which had been distributed in equal undivided shares to both, was partitioned between them, and thereafter each was the owner of a separate tract in which the other had no interest. In November, 1912, the mother was appointed guardian of the person and estate of the minor, but continued thereafter, as theretofore, to use all moneys coming into her hands, including the rent from the ward's land, indiscriminately, keeping no account as guardian. The land in question was farm land, and twice, during the period covered by the guardianship, the guardian and her family occupied the place for six months' periods, covering the crop season each time, but charged herself only one half the annual rental on each occasion, upon the theory that she had occupied it but half of the year. The trial court, by its final decree, charged the guardian with a full year's rent for each of these six months' periods, on the theory that, having had possession during the crop year, she had received the full value of the use of the property for a whole year.

The guardian also claimed thirty dollars per month for the support of the minor for three years and ten months, covering the period from the final settlement of the father's estate to the time she was appointed guardian, or a total of one thousand three hundred eighty dollars. By her testimony at the hearing, and now, she seeks that allowance, not as a direct claim, but argues that the ward's estate was reduced by the expenditure of that amount before her appointment and there is that much less for which she should account.

The situation is further complicated by the fact that the minor, on coming of age and before the final account was filed, and without the knowledge of the guardian, sold his land to one whom the trial court found acted in good faith and without any knowledge of facts indicating that the guardian could, or would, claim anything as still due her and payable out of the ward's estate.

The decree, after charging the guardian with rent amounting to four hundred fifty dollars, as above indicated, allowed the item of one thousand three hundred eighty dollars as between the guardian and the ward only, because the ward did not appear and object and, perhaps, also because the ward had other property, the proceeds of the disposition of the land sold by him, which might be subjected to the payment of this item. But the question of whether such allowance was in effect a personal judgment against the ward or can form the basis for reaching other property, is not now here. The balance thus found due the guardian amounted to $1,049.57, or in other words, without this item, the guardian was actually indebted to the ward's estate, but the decree specifically provides that such balance, with attorney's fees as allowed, and costs, all amounting to less than $1380, shall not in any wise affect the rights of the purchaser of the land.

The first question is one of fact only. There was evidence that the two six months' periods of occupancy covered the crop year in each case. It was brought out that, after the period of occupancy, there was, or might have been, some fall pasturage available, but no one attempted to fix a value therefor. The trial court, sitting in the county where the land lies, may have taken into consideration matters of common knowledge, of which judicial notice should be taken,

but in any event we cannot say that the evidence preponderates against the findings of the court on that subject.

As to the second question, we are not concerned with the allowance of the maintenance charge as against the ward, since he has not appealed, and if what we shall say may indicate a doubt as to whether that item should have been allowed at all, it will not affect the judgment as to him or determine its nature or value, for that, whatever its force, has become final.

█ Undoubtedly advances and disbursements made by a guardian to preserve and protect the estate of the ward may be presented in the final account and allowed as a lien or charge against the property so preserved and protected, since such advances in all respects partake of the nature of equitable liens. A guardian is, of course, but a trustee, and the general rule applicable to all trustees is stated by Pomeroy in his Equity Jurisprudence (4th ed.), vol. 3, § 1085, as follows:

"The trustee is entitled to be allowed, as against the estate and the beneficiary, for all his proper expenses out of pocket, which include all payments expressly authorized by the instrument of trust, all reasonable expenses in carrying out the directions of the trust, and, in the absence of any such directions, all expenses reasonably necessary for the security, protection, and preservation of the trust property, or for the prevention of a failure of the trust. He is also entitled to be indemnified in respect to all personal liabilities incurred by himself for any of these purposes. Where a trustee properly advances money for any of the above-mentioned objects, so that he is entitled to reimbursement, he also has a lien as security for the claim, either upon the corpus of the trust property, or upon the income, as the case may be; but for moneys improperly paid there is no lien."

As a general rule we think it may be said that a guardian may expend the income of the ward's estate

in his support and education, but even then an order of the court should be first obtained. But when it comes to encumbering or disposing of the real estate of the ward for that purpose, especially where the guardian is a parent of the ward, no court would permit such disposition except upon the clearest showing of necessity.

"One of the most usual purposes for which lands of a minor may be ordered to be sold, when necessary, is his support, maintenance, and education, and this will ordinarily be done when, and only when, the income of the estate, and the *corpus* of the personal estate, is insufficient therefor, and only while the ward is living. But where the guardian is also the parent of the infant ward, he will not be permitted to sell the ward's real estate for such purpose, unless it is clearly shown that he is unable to support and educate him." 28 C. J., 1173.

"The right of the guardian to charge for support or education provided for the ward is sometimes modified by his sustaining a parental or quasi-parental relation to the ward. If he be the ward's father, the duty of furnishing support rests upon him, and he cannot charge the cost of such support on the guardianship account. The rule is not so rigorous in the case of the mother; and if the child has property the mother is not bound to provide for its maintenance where the father would be, but is entitled to have his income applied thereto. And a stepfather is of course not bound to maintain the children of his wife by a former husband. But if he voluntarily assume the parental relation and receive them into his family under circumstances such as to raise a presumption that he has undertaken to support them gratuitously, he cannot afterward claim compensation for their support. So with the mother, or with any other relation or friend who takes the ward into his home and assumes a parental relation to him; if he supports him without intimating any intention of charging him for the support, the inference is that it was furnished gratuitously; and the guardian cannot afterward charge therefor." 12 R. C. L., 1158.

So here, from the beginning, the ward was a member of his mother's family and never at any time, not even now, is there the slightest showing of her inability to provide for his reasonable needs. The stepfather also received the ward into his family, and there is nothing to indicate that the usual presumption should not apply. With the record in this condition, the trial court might very well have refused to allow the item of support as against anyone, or at all, but clearly he was right in directing that the item was not a charge against the ward's real estate at the time the sale was made, and that it should not be enforced against that property in the hands of a purchaser for value, without knowledge of the facts.

The ingenious argument that this item depleted the ward's estate before the guardian was appointed, presented to excuse nonpresentation of the claim and to avoid the bar of the statute of limitations, cannot now avail, because nothing of the ward's estate had been consumed when the guardian was appointed, save only the income which had theretofore accrued, and the wrongful or unauthorized use of that prior income cannot now form the basis for a charge or encumbrance against the *corpus* of the estate.

The judgment is affirmed.

PARKER, MAIN, MILLARD, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting)—It appears that appellant, the mother and guardian, after the distribution of her first husband's estate, for a period of three years and nine months, acted as natural guardian of her child and collected and disbursed the income from the property which had been distributed jointly to her and her son from the estate of her husband. At the end of this period of three years and nine months, she was appointed guardian, and when, in 1924, she filed her first account, she charged herself with the income she

had received from the minor's estate prior to her appointment as legal guardian, and then credited herself with $30 per month, a total of $1,380, for the maintenance and support of the minor during this almost four-year period. It is true that the matter was loosely handled, and that considerable delay elapsed before the appointment of a legal guardian, and, when appellant was appointed such guardian, her accounts were not properly kept or promptly presented to the court; but, in my opinion, the account, as finally presented, was based on a proper theory, and upon the record now before us the court properly allowed appellant a credit against her son for the $1,380.

The $1,380 in question was not appellant's money, but her child's money, which she had collected and disbursed prior to her appointment as legal guardian. This was not money which came into her possession as guardian, but money which she had collected and spent before her appointment, and she need not have charged herself with this amount in her guardianship account. It was, however, the better practice for her to explain the matter to the court and present the situation fully, which she did. Her offset against this charge, which she presented against herself, was not properly a claim against her child's estate, but was simply an explanation of the absence of so much money from her guardianship account. The trial court seems to have been of the opinion that this item constituted a stale claim against the minor, but it seems to me that this entirely misconceives the actual situation and that the judgment of the trial court, affirmed by a majority of this court, allowing the claim against the ward, but not against his real estate, results in a great injustice to appellant.

The record shows that, in 1924, appellant filed her first account as guardian. In this account, she recites

the death of her husband in 1907, her appointment as administratrix of his estate shortly thereafter and the entry of the decree of distribution therein January 15, 1909. She then shows the cash which she received, belonging to her son, from the date of the decree of distribution up to her appointment as guardian, September 14, 1912, and also sets out the taxes and other items which she paid during that period. She then reports the cash belonging to her ward, which she received after her appointment as guardian, and taxes which she paid during that period. Then she proceeds to state that she should be allowed, to offset against the cash she received prior to her appointment as guardian, $30 per month from the date of the decree of distribution to the date of her appointment as guardian, for the support and maintenance of her son. According to this account, there was, at the time it was filed, a balance due appellant from the estate of her son, for cash expended other than for her son's support and maintenance, in the sum of $278. On March 27, 1924, the court entered an order approving this account, allowing appellant a credit against the estate in the sum of $278 "and a further sum of $5,760 for the support and maintenance of George King, minor, for the last sixteen years," and providing that she be allowed $30 each month, from the date of the order, for the support of the minor until he reach the age of twenty-one years. This order was, of course, interlocutory only, and was not binding upon the minor on the final settlement of the guardian's accounts, but it might well be held binding as to respondent, a third party, with constructive notice thereof.

The matter came on finally to be heard upon the amended final account of the guardian, dated September 19, 1927, and the exceptions thereto filed by respondent. In paragraph 3 of this amended final ac-

count, the guardian sets forth what she calls "Account for Pre-guardianship period, from Jan. 11th, 1909 to Nov. 7th, 1912," in which she shows the cash received by her during that period, as natural guardian of her son, in the total amount of $1,925, and the disbursements which she made during that period by way of taxes, in the sum of $287.56, and for the support and maintenance of the minor at $30 a month for three years and ten months, or a total of $1,380, in all $1,667.56, which, deducted from her receipts, left a balance in her hands November 7, 1912, when the guardianship proceeding commenced, in the sum of $257.44. The amended final account then continued to show appellant's receipts and disbursements as guardian up to the date thereof, which, according to her figures, showed a balance due her from the estate of her ward in the sum of $2,045.05, from which she deducted $257.44, being the balance in her hands belonging to her ward when she was appointed guardian, leaving a net balance due her from the estate of her ward in the sum of $1,787.61. She then alleged that she should receive an allowance for attorney's fees for services rendered by her counsel in closing the guardianship estate.

Upon the hearing upon this amended final account and respondent's exceptions thereto, the trial court, as stated in the majority opinion, charged back against the guardian $450 for rental of the ward's property, which the trial court held the guardian should account for, and then continues:

"As to the item of thirteen hundred and eighty dollars ($1380) with which the guardian has credited herself for support and maintenance of her son from January 11, 1909, to November 7, 1912, three years and ten months prior to her appointment as guardian, the court finds that no claim was ever presented or filed for said amount until 1924, but inasmuch as the

ward has made no appearance and filed no objections said amount should be allowed, but only as between said guardian and said ward.

"That except as to the items mentioned in paragraphs two and three in the amended final account of the guardian, said account should be, so far as said guardian and her ward are concerned, allowed and approved, together with an attorney's fee in the sum of two hundred dollars ($200) as compensation for her attorneys in this proceeding, together with the publication fees in connection with the settlement of said final account."

The trial court thereafter approved the account as between the guardian and her son, but held that the real estate, formerly the property of the son, was free and clear in the hands of respondent from any liability to appellant or charge in her favor.

While it is doubtless true that a presumption exists that a parent will support his or her minor child, an examination of the record now before us satisfies me that, under the circumstances of this case, the court properly allowed appellant $30 a month out of the minor's estate for his support and maintenance. In any event, the court twice made this allowance, and any question as to the propriety of an allowance and the reasonableness of the amount allowed is now foreclosed.

Certainly no logical reason exists for holding, as did the trial court, that appellant was entitled to an allowance from the date she was appointed guardian, but as to the preguardianship period must account to the minor's estate for all of his money which she collected and receive no credit for so much thereof as she expended for his support and maintenance. As I construe the record, the lower court had before it merely appellant's proceedings as guardian, which commenced, as appellant shows, with a balance of cash in her hands belonging to her son in the sum of $257.44.

130

If the court had been of the opinion that appellant was liable to her son for money which she had received before her appointment as guardian, an order should have been entered requiring her to account therefor, but the record does not disclose that any such action was taken. The trial court, as indicated in his memorandum opinion, believed that appellant should have presented a claim immediately upon her appointment as guardian and that as she did not do this, she should be required to account for what she received prior to her appointment as guardian, but should not be allowed any credit for what she had spent out of her son's money for his support during this period.

The last paragraph of the majority opinion indicates that this court holds that appellant is now seeking to establish a claim or charge against her ward's estate by reason of the fact that she expended some of the ward's money prior to her appointment as his guardian on account of his support and maintenance. In my opinion, the theory in regard to this matter entertained by the trial court and by the majority of this court is erroneous, as it seems to assume that appellant has, in some way, attempted to establish a claim, charge or encumbrance against her son's estate, based upon money which she expended for him prior to her appointment as his guardian. Such is not the case. Her statement of the preguardianship period shows that, when she was appointed guardian, after paying taxes, interest and $30 a month for the support of her ward, she still had a balance in her possession belonging to her son in the amount of $257.44. In the guardianship accounts, appellant should either not be charged with the money belonging to her ward which she received prior to her appointment as guardian, or she should be given whatever credit she showed she was entitled to by way of expenditures for her

ward's benefit. Of course, the court did allow appellant a credit as against her son, for the reason, as the court stated, that the son did not appear and contest the account, but the court refused to allow this credit to appellant as a charge against her ward's real estate, which, in my opinion, was error.

The court was perfectly right in allowing respondent, upon its exceptions, to question the verity of appellant's account and to object to any items claimed by appellant, but respondent stands at best in the place of the ward, and has no greater rights or equities. It is perfectly evident that there was ample data of record in the guardianship proceeding, prior to respondent's purchase of the real estate in question, to put any one examining the records upon notice that appellant had claims for which her son's real estate might well be liable. The order approving appellant's first account, *supra*, clearly indicated that the court had expressly found that there was, at that time (1924), due appellant from the estate of her ward, $278 for money expended by her for taxes, interest, etc., together with a large sum for the support and maintenance of the then minor, a further allowance of $30 a month for the support of the minor in the future being then directed.

Respondent purchased the real estate from George King, appellant's son and ward, shortly after the lad became of age, without any examination of the record, and in spite of the fact that the son said something about an existing claim on the part of his mother. In my opinion, the real estate of a minor (his personal estate being exhausted) is, in the absence of any facts which would create an estoppel, for such time after the minor becomes of age as is reasonably necessary for the guardian to prepare and file a final account and obtain a hearing thereon, chargeable with the

proper disbursements made by his guardian during the course of the guardianship; and that persons who purchase real estate from a minor (at least in cases where the real estate is situated in the same county in which the guardianship proceeding has been pending, the guardianship proceeding being still unsettled and no great period of time having elapsed since the minor became of age) take the real estate with constructive notice of any rights which the guardian may have for reimbursement or payment out of the ward's estate. If this be not the law, how can a guardian be protected, as the final account cannot properly be filed until the ward is of full age, and the majority opinion seems to hold that the ward can then sell his real estate, free and clear from any claim on the part of the guardian?

It may be that the court would marshal the ward's assets and protect a purchaser in good faith to the extent that the guardian be first reimbursed out of other funds belonging to the minor; but that question is not before us.

It appears that, on the hearing on appellant's amended final account, she reduced the amount which she claimed to be due her from the sum of $1,787.61 to $1,499.57. From this amount, the court deducted $450 on account of rentals which should have been charged against appellant, and found that, as between appellant and her son, the latter owed her $1,049.57. Respondent contends that, because in her 1924 account appellant stated that she had for sixteen years supported her son out of her own property, she should not be allowed the credit she asks by way of support money. While the 1924 account was inartistically drawn, when the document is considered as a whole, appellant's contention sufficiently appears therefrom, and the paragraphs of the account relied upon by respondent are insufficient to defeat appellant's recovery

as to any sums justly due to her. Respondent cites cases which hold that money advanced for support of a minor, prior to the appointment of a guardian, is a proper basis for a claim against the guardianship estate, and that a claim therefor must be filed. In this case, however, appellant does not claim that she spent *her* money for the support of the minor prior to her appointment as guardian, but says that she spent the minor's money on that account, which is an entirely different thing, and it would be unjust to charge her with this money and allow her no credit against the same for so much thereof as she in good faith expended for her son's support.

In my opinion, the trial court properly found that there was due appellant, from the guardianship estate, the sum of $1,049.57, but I believe the court erred in refusing to make this charge, together with the amount allowed to appellant as attorney's fees, a charge upon the real estate which appellant's son had sold to respondent. On the other hand, respondent should be entitled to have the property which it conveyed to George King, appellant's son, in exchange for his property, first subjected to appellant's claim. The proceeding should be remanded with permission to respondent to impound, according to law, the property which it conveyed to George King, or the proceeds thereof, and subject the same in the first instance to the lien of the charge in favor of appellant. If for any reason none of this property can be subjected to this claim, then, in my opinion, the property conveyed by George King to respondent is liable therefor, and appellant is entitled to a lien thereon.

For the reasons assigned, I dissent from the opinion of the majority.

MITCHELL, C. J., FULLERTON, and FRENCH, JJ., concur with BEALS, J.